UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VINCENT A.,

            Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

---

20-CV-01802-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 11)

Plaintiff Vincent A.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 8) is denied, and defendant's motion (Dkt. No. 9) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on December 4, 2017, alleging a disability onset date of July 3, 1987. (Administrative Transcript ["Tr."] 257-62). The application was initially denied on March 22, 2018. (Tr. 197-202). Plaintiff timely filed a request for an administrative hearing. (Tr. 205-07). On October 25, 2019, Administrative Law Judge ("ALJ") Ellen Parker Bush held a video hearing from Lawrence, Massachusetts. (Tr. 139-82). Plaintiff appeared in Buffalo, New York, with counsel. A vocational expert also testified at the hearing. The ALJ issued an unfavorable decision on February 25, 2020. (Tr. 9-23). On October 9, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 2-8). This action followed.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

      To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

§§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is

not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

   III.   *The ALJ's Decision*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 4, 2017, the application date.  (Tr. 14).  At step two, the ALJ found that Plaintiff had the following severe impairments: history of learning disability; and history of impulse disorder.  (Tr. 14-15).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15-17). Prior to proceeding to step four, the ALJ determined that Plaintiff had the following RFC:

> [C]laimant has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: he can frequently handle and finger with the left upper extremity. He must avoid concentrated exposure to respiratory irritants. He can understand and remember simple instructions. He can sustain attention and focus well enough to complete simple tasks that have no fast pace or strict production quota. He can perform minor and infrequent changes to task. He cannot work around the general public. He can have brief and superficial interaction with coworkers and supervisors (with "brief" and "superficial" defined as in Webster's dictionary, i.e., short, cursory, not deep).

(Tr. 17-22).

At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 22). At step five, the ALJ found that there exist jobs in significant numbers in the national economy

that Plaintiff could perform. (Tr. 22-23). Therefore, the ALJ found that Plaintiff was not disabled since December 4, 2017, the application date. (Tr. 23).

IV.   *Plaintiff's Challenge*

Plaintiff contends that remand is required here because, at step three of the sequential process, the ALJ failed to consider properly the Medical Listings 12.08 and 12.11, for Personality and impulse-control and neurodevelopmental disorders. The Court finds Plaintiff's contention without merit.

An individual is found disabled if the individual has an impairment(s) that meets or equals one of the listings in appendix 1 and meets the durational requirement. 20 C.F.R. § 416.920(a)(4)(iii). The individual who meets the criteria is found disabled without considering age, education, and work experience. 20 C.F.R. § 416.920(d). An individual alleging that he has an impairment that meets a listing has the burden to "demonstrate that his disability [meets] all of the specified medical criteria of [a Listing]." *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 888 (2d Cir. 2007) (internal citations omitted). "For a claimant to show that his impairment matches a Listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). The ALJ found that Plaintiff did not meet his burden. (Tr. 15-17).

The ALJ evaluated the evidence and concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment included in the Listing of Impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P, with particular attention to listing 12.08 for Personality and impulse-control disorders and listing 12.11 for Neurodevelopmental disorders. (Tr. 16-17). Listings 12.08 and 12.11 are

both divided into two sections – paragraph A and paragraph B. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.08, 12.11. To meet either listing, Plaintiff had to show that the criteria of both paragraph A and paragraph B had been satisfied. *Id.* The paragraph A criteria of listing 12.08 differ from that of listing 12.11. *Id.* However, the paragraph B criteria in each listing are identical. *Id.* The ALJ reviewed the record and concluded that Plaintiff did not have an impairment that met the requirements of either listing 12.08 or 12.11 because the evidence did not show that the paragraph B criteria had been satisfied. (Tr. 16-17).

Plaintiff contends that the ALJ did not properly consider listing 12.08 or listing 12.11. The Court disagrees. The ALJ analyzed the relevant listings, reviewed the evidence, and found that the paragraph B criteria were not satisfied. (Tr. 16-17). Plaintiff notes that the ALJ did not discuss the paragraph A criteria. However, in concluding that the criteria in paragraph B were not satisfied, the ALJ was not required to address the criteria in paragraph A of either listing. (Tr. 16-17). Rather, the ALJ found that Plaintiff did not meet either of the relevant listings because paragraph B was not satisfied. (Tr. 16-17).

In her decision, the ALJ analyzed the paragraph B criteria. (Tr. 16-17). To satisfy the paragraph B criteria, Plaintiff had the burden of showing that he had an:

Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

1. Understand, remember, or apply information.

2. Interact with others.

3. Concentrate, persist, or maintain pace.

4. Adapt or manage oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.08, 12.11.

After considering Plaintiff's testimony together with all the evidence, the ALJ concluded that Plaintiff had a marked limitation in adapting and managing himself and moderate limitations in the remaining three criteria. (Tr. 16-17). Plaintiff notes that when an ALJ determines that a claimant does not meet or equal a listing, the ALJ should provide an explanation, citing *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009). The ALJ did so here. The ALJ provided an extensive analysis of the paragraph B criteria in concluding that Plaintiff did not meet or equal a listing. (Tr. 15-17). The ALJ noted that Plaintiff provided childcare for his three young children and had regular visitation with an older child. (Tr. 16). Furthermore, the ALJ found that Plaintiff had a good relationship with his fiancé and had been cooperative with medical providers. (Tr. 16, *referring to* Tr. 389, 400). However, the ALJ credited Plaintiff's testimony that he becomes anxious around people and concluded that Plaintiff had a moderate limitation in interacting with others. (Tr. 16).

Upon concluding that the evidence did not support a finding that Plaintiff met or equaled a listing, the ALJ developed an RFC supported by substantial evidence. As noted, the RFC includes strict social limitations. (Tr. 17-18). The RFC indicates that Plaintiff cannot work around the general public and can have only brief and superficial interaction with coworkers and supervisors. (Tr. 17-18). The ALJ found that Plaintiff had a moderate limitation in social functioning and explained her determination of the RFC. (Tr. 16-21).

Plaintiff contends that the ALJ's finding of a moderate limitation in social functioning conflicts with the ALJ's RFC finding, which contains more restrictive

limitations. Specifically, Plaintiff argues that restrictions of no contact with the general public and only brief, superficial contact with coworkers and supervisors indicate that Plaintiff had greater than a moderate limitation in social functioning. However, a moderate limitation in social functioning is consistent with restrictions of "avoiding contact with the public, and limiting contact with co-workers and supervisors." *Holdridge v. Comm'r of Soc. Sec.*, 351 F.Supp.3d 316, 322 (W.D.N.Y. 2018). Notably, the ALJ in this case developed an RFC that is more restrictive than the RFC in *Holdridge*. (Tr. 17-18). Unlike in *Holdridge*, the ALJ found that Plaintiff could *never* work around the general public and could have only brief and superficial interaction with co-workers and supervisors (with "brief" and "superficial" defined as in Webster's dictionary, i.e., short, cursory, not deep). (Tr. 17-18).

Plaintiff further argues that the ALJ's finding that he had only moderate, rather than marked, limitations in social functioning is not supported by substantial evidence. The Court finds this argument unavailing. As stated, the ALJ determined that Plaintiff had moderate limitations in social functioning based on his testimony and the medical evidence. (Tr. 16). The ALJ noted Plaintiff's testimony that he cared for his three very young children, had regular visitation with one of his two older school-aged children, and had a good relationship with his fiancé. (Tr. 16, 148-50, 160-61). Plaintiff alleges that the ALJ drew an assumption about Plaintiff's involvement in childcare based on vague and unsupported facts. However, the ALJ based this finding on Plaintiff's own testimony. (Tr. 16, 148-50). When the ALJ asked Plaintiff about childcare, he testified that his fiancé worked at Family Dollar, he had no assistance from family or an outside organization, and he basically took care of them himself. (Tr. 148-49). The ALJ, as the factfinder, was in the

best position to interpret and assess Plaintiff's testimony. *Salmini v. Comm'r of Soc. Sec.*, 371 Fed. App'x 109, 114 (2d 2010).

The medical evidence also supported a finding that Plaintiff had no greater than a moderate limitation in social functioning. The ALJ noted that consultative examiner Dr. Santarpia and Nurse Practitioner (NP) Sharon Lim found Plaintiff to be cooperative. (Tr. 16, *referring to* Tr. 389, 400). Dr. Santarpia evaluated Plaintiff in February 2018. (Tr. 399-403). Plaintiff reported diagnoses of bipolar disorder and anxiety, but Dr. Santarpia noted that no record substantiated any formal diagnosis. (Tr. 399). Plaintiff stated that his symptoms were controlled/stabilized with medication. (Tr. 400). Dr. Santarpia reported that Plaintiff's demeanor and responsiveness to questions was cooperative, and his manner of relating and overall presentation was adequate. (Tr. 400). Plaintiff's motor behavior was normal, and his eye contact was appropriate. (Tr. 400). His speech was fluent and clear, and his thought processes were coherent and goal directed. (Tr. 400). Plaintiff's affect was of full range, and his mood was euthymic. (Tr. 401). His attention and concentration were mildly impaired, but his memory skills were intact. (Tr. 401). Dr. Santarpia estimated that Plaintiff's cognitive functioning was in the low average range. (Tr. 401). Plaintiff displayed fair insight and judgment, and he reported that he was independent in self-care and spent time boxing. (Tr. 401). As noted, Dr. Santarpia opined that Plaintiff had only mild impairments in regulating emotions, controlling behavior, and maintaining well-being. (Tr. 402). The doctor indicated that Plaintiff's problems were caused by a history of noncompliance with medication. (Tr. 402). Dr. Santarpia stated that the evaluation appeared to be consistent with psychiatric problems that did not

appear to be significant enough to interfere with Plaintiff's ability to function daily. (Tr. 402).

The record supports a finding that Plaintiff had moderate limitations in social functioning. Plaintiff referenced evidence indicating that he had no friends, experienced an increase in anxiety in public settings, and had a history of domestic violence. (Tr. 170, 387-88, 391). However, the record indicates that Plaintiff has not engaged in domestic violence in his current relationship. (Tr. 388). The ALJ acknowledged that the record included mixed evidence regarding Plaintiff's social functioning, specifically noting the being around other people was a trigger for Plaintiff's anxiety. (Tr. 16). Accordingly, the ALJ considered Plaintiff's anxiety around other people together with his ability to interact appropriately with medical care providers, his fiancé, and his children in concluding that Plaintiff had a moderate limitation in social functioning. (Tr. 16).

Plaintiff's argument that he is unable to maintain socially appropriate behavior on a consistent basis is also unavailing. He alleges that his ability to cooperate with Dr. Santarpia is not an indication that he is able to maintain a degree of social cooperation such that he could sustain employment. Rather, he contends that the ALJ improperly selected isolated instances of improvement in concluding that Plaintiff was capable of working, citing *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)). Plaintiff's argument is misplaced. A review of the record shows that Plaintiff only engaged in sporadic treatment and realized improvement when he complied with treatment. (Tr. 400, 615). In December 2017, Plaintiff reported that his mood improved after he started taking Trileptal, stating that he had had only one isolated episode of panic. (Tr. 615). In February 2018, Plaintiff reported

to Dr. Santarpia that he had been taking his medication regularly and his symptoms were controlled/stabilized. (Tr. 400). Despite his improvement with treatment, the ALJ acknowledged that the evidence was mixed and determined that Plaintiff had a moderate limitation in interacting with others. (Tr. 16). The ALJ did not focus on isolated instances of improvement. Rather, she appropriately reviewed all the evidence and found that Plaintiff had the ability to cooperate in social situations. (Tr. 16).

The ALJ noted that Plaintiff engaged in minimal treatment. (Tr. 20). In determining disability, an ALJ may properly consider whether a claimant complied with treatment recommendations. 20 C.F.R. § 416.930(a) and (b). Plaintiff had been compliant with medication when he presented to Dr. Santarpia, and he acknowledged that his girlfriend observed positive changes in him when he took his medicine. (Tr. 400). Nevertheless, there is evidence that Plaintiff was inconsistent with treatment. In December 2016, a discharge summary from Lakeshore Behavioral Health indicated that Plaintiff presented to his initial intake assessment and one other appointment but missed all other appointments and did not respond to phone calls. (Tr. 383). Consequently, Plaintiff never connected with a psychiatrist or psychiatric nurse practitioner. (Tr. 384). Dr. Carol Young reported that Plaintiff ran out of his medication in December 2017, but did not request a new prescription until March 2018. (Tr. 615). In July 2018, Plaintiff presented to counseling for the primary purpose of having his SSI paperwork completed. (Tr. 617). He had not been engaged in treatment since March 2018 and did not express interest in reengaging in treatment. (Tr. 617). NP Lim determined that Plaintiff had experienced benefit from medication, but Plaintiff stated that he did not like the return of symptoms when he stopped taking medication. (Tr. 617). Plaintiff admitted that he did not take his

medication as prescribed. (Tr. 617). Even without medication, a mental status exam revealed that Plaintiff's thought process was grossly intact with no perceptual disturbances, he had no suicidal or homicidal ideation, and his attention/concentration and memory skills were intact. (Tr. 618). In August 2018, treatment notes indicate that Plaintiff had missed three counseling appointments and several medication management appointments. (Tr. 610).

The ALJ explained her analysis in developing an RFC consistent with the treatment record. (Tr. 16-18). Plaintiff contends that the decision is internally inconsistent, arguing that the RFC does not comport with the step three paragraph B analysis. The Court finds this contention without merit. "It is well established that a Step 3 determination is not an RFC assessment, but instead is used to rate the severity of mental impairment. A determination made at Step 3 therefore need not carry over verbatim to the ultimate RFC determination because the two determinations require distinct analysis." *Jay v. Comm'r of Soc. Sec.*, No. 17-CV-59S, 2018 WL 3688315, at *3 (W.D.N.Y. Aug. 3, 2018) (citations omitted). Accordingly, any variance between a step three finding and an RFC finding warrants remand only if it "leaves the Court unable to discern the ALJ's reasoning or reconcile [the] inconsistent findings". *Lynessa v. Comm'r of Soc. Sec.*, 1:20-CV-00971, 2021 WL 4437184, at *5 (W.D.N.Y. Sep. 28, 2021) (quoting *Jay*, at *4). In *Lynessa*, the ALJ found that the claimant had moderate limitations in the ability to interact with others. *Id.* The ALJ developed an RFC indicating that the claimant could tolerate occasional to no interaction with the public and only occasional, superficial interaction with supervisors and coworkers. *Id.* The ALJ explained that she gave the claimant the benefit of the doubt and developed an RFC in accordance with the claimant's testimony. *Id.* The Court found

that *Lynessa* was "not a case with an unexplained inconsistency between the ALJ's step three finding and her RFC analysis; it is a case in which the ALJ, in fashioning the RFC, exercised her discretion to assess limitations more severe than those supported by the medical evidence of record in deference to Plaintiff's testimony." *Id.*

In contrast to *Lynessa*, the Court in *Jay* found that the ALJ had not properly explained her analysis in developing the RFC. *Jay*, at *4. The ALJ found that the claimant had moderate difficulties in maintaining social functioning and developed an RFC limiting the claimant to "occasional, incidental" interaction with co-workers and the public and to "occasional" interaction with supervisors. *Id.* at *3. The Court noted that a Mental Impairment Questionnaire seemed to support the RFC, but the ALJ had accorded the opinion little weight. *Id.* at *4. The Court found that remand was appropriate because the ALJ had not properly explained the apparent contradiction. *Id.*

As the Court in *Holdridge* found, a moderate limitation in social functioning is consistent with restrictions of no interaction with the public and limited contact with co-workers and supervisors. *Holdridge*, 351 F.Supp.3d at 322. However, even if an inconsistency existed, this case is analogous to *Lynessa* because the decision shows that the ALJ explained that she accorded Plaintiff the benefit of the doubt in developing the RFC. (Tr. 21). The record includes only two recent opinions – from consultative examiner Susan Santarpia, Ph.D., and State agency consultant T. Bruni, Ph.D. (Tr. 189-90). Dr. Santarpia found that Plaintiff had only mild impairments in regulating emotions, controlling behavior, and maintaining well-being. (Tr. 402). Dr. Bruni concluded that Plaintiff had no severe mental impairment. (Tr. 190). The ALJ found neither opinion persuasive but concluded that Plaintiff had a learning disorder and impulse disorder that

were more than minimally limiting based on remote academic records and Plaintiff's behavior in treatment during July 2018 when he was not using his medication. (Tr. 21, *referring to* Tr. 451-584, 617). The ALJ found that Plaintiff could perform simple work in a low stress environment with limited social interaction. (Tr. 22). The ALJ developed an RFC with greater limitations than the medical evidence warranted and provided an explanation for the RFC. (Tr. 21). Because the ALJ explained her reasoning and reconciled any potentially inconsistent findings, remand is not warranted. (Tr. 16-22).

In sum, Plaintiff has not met his burden of proving that he has greater limitations than the decision indicates. Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position, what he must show is that no reasonable factfinder could have reached the ALJ's conclusions on this record. *Brault*, 683 F.3d at 448 (2d Cir. 2012); *see also Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." (citations omitted)). Because substantial evidence supports the ALJ's findings, under 42 U.S.C. § 405(g), the ALJ's decision must be affirmed.

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is denied and defendant's motion for judgment on the pleadings (Dkt. No. 9) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   November 21, 2022
         Buffalo, New York

                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge